Filed 2/25/14  In re A.S. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E059108 |
| Plaintiff and Respondent, | (Super.Ct.No. J249268) |
| v. | OPINION |
| M.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

# I

## INTRODUCTION[1]

This appeal concerns the jurisdictional and dispositional orders for A.S. (§§ 300, 361, and 395.) During a home birth in March 2013, mother, M.S., was found by the police living in unsanitary conditions without running water. It was later reported that mother was drinking alcohol while nursing the infant. CFS[2] removed the child and the juvenile court found jurisdiction based on alleged alcohol abuse and unfit living conditions and ordered A.S. removed. Mother seeks to reverse the juvenile court's order for removal and have the dependency case dismissed. We hold that sufficient evidence supports the juvenile court's findings and we affirm the jurisdictional and dispositional orders.

# II

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Detention

CFS filed the original dependency petition (§ 300, subds. (b) & (g)) in May 2013 when A.S. was one month old. The petition alleged that mother had failed to protect A.S. because she was nursing the child while abusing alcohol. It further alleged mother suffered from untreated mental illness and lived in an unstable and unfit environment. The identity and whereabouts of A.S.'s father were unknown.

---

[1] All statutory references are to the Welfare and Institutions Code. Rule references are to the California Rules of Court.

[2] Department of Children and Family Services, San Bernardino County.

Mother was diagnosed with bipolar disorder when she was 15 years old. Mother had been the subject of previous referrals in December 2007 and June 2011 for mental illness, substance abuse, and neglect of other children, whose father has custody of them.

Mother gave birth to A.S. at home with help from a neighbor. Mother did not obtain prenatal care. A.S. did not receive medical examinations or immunizations. Mother did not know who the baby's father was but she assigned the baby the last name of "Steinbeck."

The detention report described mother's residence on April 21, 2013, as unfit and hazardous, with mother "living in a small room with minimal provisions for infant." Apparently, the residence's owner was a drug user in custody for burglary. Mother admitted to having two drinks a day while nursing. Mother agreed to leave her residence and stay with a friend. Mother then went to motel for one night.

On May 1, 2013, mother was still living at the unfit residence and her speech was "pressured and rapid." CFS obtained a warrant and returned with a police officer. Mother strenuously resisted the removal of A.S. A.S. was taken into custody and placed in foster care where he consumed infant formula voraciously.

At the detention hearing, mother objected to the removal warrant because it was executed at night. Mother could not identify the father of A.S. The court found there was a prima facie case to detain A.S. and no reasonable means to protect him without removal. The court ordered mother to submit to a drug test and to have supervised visits once a week for two hours and not to breastfeed A.S.

*B. Jurisdiction/Disposition*

In the May 2013 report, CFS asserted that mother's alcohol use was 24 beers and a fifth of vodka daily. Mother was panhandling for liquor money. Her residence did not have running water or electricity. A.S. was observed to be lethargic. Mother had a positive alcohol test on May 6, 2013. Mother submitted to a hair follicle test that was negative for drugs.

During a family law case in 2007, mother's former husband was given custody of her other children. The social worker submitted photos of mother's residence during the earlier 2007 referral. After mother assaulted father in June 2011, he obtained a three-year restraining order. Mother's criminal history included convictions for domestic violence in June 2011 and vandalism in May 2012.

In interactions with CFS, mother was disruptive, belligerent, difficult, confused, erratic, and confrontational. Mother denied the allegations of the petition. She said she drank beer but did not use illicit drugs. Mother denied having mental illness and living in an unfit or unstable environment. She had stayed with a friend, instead of at a motel, until the water was turned back on and she was having a washing machine delivered.

When A.S. was removed, he had an upper respiratory infection. He continued to gain weight, increasing almost three pounds in two weeks. He showed symptoms of drug exposure. He cried "inconsolably." Mother did not want A.S. to be immunized. Mother had not applied for Medi-Cal or a birth certificate.

CFS concluded there was a poor prognosis for reunification because of mother's chronic substance abuse, untreated mental illness, and denial. She was argumentative, blaming, and uncooperative.

On June 11, 2013, the court conducted the hearing on jurisdiction and disposition. After the family law court placed mother's other children with their father, the restraining order issued in 2011 prohibits her contact with them. The court admitted documentary evidence about the June 2011 incident, which involved mother's alcohol abuse, domestic violence, and living in a filthy unsanitary apartment.

The court admitted into evidence the police logs for mother's interactions with the police in March, April, and May 2013. The logs showed the police had contacted her at home with the newborn A.S. on March 27, 2013. The police advised her she had to move because there was no running water in her home. On April 27, 2013, the residence had power, a telephone, and bottled water. A.S. was nursing and mother appeared to be sober.

Mother testified that she did not nurse A.S. while drinking alcohol. She denied that she had admitted having two drinks when the social worker stopped by the house. After A.S. was removed, mother drank alcohol on May 5, 2013.

Mother disputed her residence was uninhabitable but she left the house after the police determined it had no running water and was unsafe. Mother had been using hauled water and having some issues with the water pump but she had paid the water bill and the water was scheduled to be turned back on. Mother stayed with a friend until the water problems were resolved. When the social worker visited on April 21, 2013, mother was

5

not living at the house but had returned to get some items and feed the pets. After speaking with the social worker, mother stayed at a hotel. Mother returned to the house after the water was turned on—about April 25, 2013. On May 1, 2013, there was running water and the house was clean. The debris in the yard did not affect A.S. who was only a few weeks old.

Mother had begun renting a room in a house in Moreno Valley that would accommodate A.S. two days before the last day of the jurisdictional hearing. She had begun participating in services for parenting, domestic violence, and substance abuse. She worked occasionally cleaning houses.

The social worker testified that Buffy, a known drug addict involved in rehabilitation, had reported that mother was drinking alcohol excessively while pregnant and when nursing. The social worker testified that A.S. was at risk from mother's substance abuse, residential instability, history of child neglect, and domestic violence.

The court sustained the allegation that mother suffered from alcohol abuse, struck the allegation regarding mental illness, and sustained the allegation that mother lived in an unstable and unfit environment. The court found true the allegation about the unknown father's whereabouts and parenting abilities. The court removed A.S. from mother's care and ordered her to receive six months of reunification services and to participate in a psychological evaluation, any resulting necessary services, an outpatient program, random testing, a 12-step program, parenting courses, and individual counseling.

6

## III

## SUFFICIENCY OF EVIDENCE

Mother argues there is insufficient evidence to support the juvenile court's true findings on the petition's allegations of alcohol abuse (b-1) and unstable and unfit environment (b-2) because, at the time of the disposition hearing in June 2013, mother was renting a room in a house in Moreno Valley, she was not nursing, and she had not tested positive for alcohol since May 2013. Therefore, mother asserts there is no evidence she posed any risk to A.S.'s health or safety. In the alternative, mother proposes A.S. could have been placed with her with services and supervision by CFS. She contends the disposition order for removal should be reversed.

Jurisdiction may be found pursuant to section 300, subdivision (b), when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." Based on our deferential review, we hold sufficient evidence supports the juvenile court's orders. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

According to the evidence, mother has a history of alcohol abuse, causing her to lose custody of her older children in June 2011. Past events can help determine present unfitness. (*In re Michael S.* (1981) 127 Cal.App.3d 348, 358.) Mother consumed alcohol while pregnant and when nursing A.S. Her denials on this point were inconsistent and lacked credibility.

7

Section 300.2 states: "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." Section 300, subdivision (b), requires a showing of a risk of serious physical harm resulting from a parent's substance abuse. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1005.) Here mother lived and gave birth in unsanitary conditions without obtaining medical treatment for herself and her child. His weight gain after removal certainly signaled that mother was not providing him with adequate nutrition as well as subjecting him to unsafe living conditions. (*In re David M.* (2005) 134 Cal.App.4th 822, 830.)

At the time of A.S.'s removal, mother was occupying an uninhabitable residence as she had in the past. She then resided at various temporary locations before taking up residence in Moreno Valley in the middle of the jurisdictional hearing. Her present circumstances offered no assurance of stability or security for A.S. (*In re Rocco M..* (1991) 1 Cal.App.4th 814, 824.)

The evidence of alcohol abuse and an unfit home is not only substantial, it is abundant. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) For the same reason, we reject mother's contention the court should have selected an alternative disposition. Nothing in this record predicts that A.S. would not be at risk in mother's care at this point or in the future. (*In re Rocco M., supra*, 1 Cal.App.4th at pp. 820, 824; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1395-1396; *In re Janet T.* (2001) 93 Cal.App.4th 377, 388; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.)

Mother also lacks standing to raise any argument about the jurisdictional findings concerning A.S.'s unknown father.  (§ 300, subd. (g).)  (*In re K.C.* (2011) 52 Cal.4th 231, 236; *In re D.S.* (2007) 156 Cal.App.4th 671, 674.)   Furthermore, jurisdiction is fully established based on the allegations against mother, making this argument irrelevant to the court's jurisdictional findings.

## IV

## DISPOSITION

Based on sufficient evidence, we affirm the jurisdictional and dispositional orders of the juvenile court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


HOLLENHORST

Acting P. J.


McKINSTER

J.

9