Filed 6/29/23  In re W.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| In re W.T. et al., Persons Coming Under the Juvenile Court Law. | C096032 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>    v.<br><br>J.D. et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. JD241504, JD241505) |

Appellants E.T., P.T., and J.T.D-V are the half siblings of the subject minors, N.T. and W.T. (minors).[1]  They appeal from the partial denial of their Welfare and Institutions Code[2] section 388, subdivision (b) petitions; the juvenile court granted their request to be

---

[1]  While we recognize the use of initials and shortened names may be difficult to read, it is necessary in this case to maintain the confidentiality of these proceedings.  (Cal. Rules of Court, rule 8.401(a).)

[2]  Undesignated statutory references are to the Welfare and Institutions Code.

1

recognized as siblings and to seek visitation but denied their request that the minors be placed with the T-B family—friends they consider to be their chosen family. The minors, through counsel, had argued in support of appellants' requests and the T-B family had also filed section 388 petitions seeking placement of the minors, but neither the minors, nor the T-B family, appealed from the juvenile court's placement orders. Finding appellants lack standing to contest the placement orders, we dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Because none of the appellants are parties in this dependency case, we were provided a limited record in this appeal. (§ 827.) The underlying facts and procedure, however, are not necessary to our resolution of this appeal.

The (twin) minors were detained at birth. The D-V family, who were nonrelative extended family members of mother, had adopted half sibling J.T.D-V and were then the legal guardians of half siblings E.T. and P.T., who they subsequently adopted during the course of these proceedings. The D-V family did not have the capacity to take the subject minors into their home, and the minors were placed in foster care.

The D-V family reached out to their community of extended "chosen family" to look for a placement. The T-B family came forward and contacted the D-V family. Although the T-B family and the D-V family had had little contact with each other up to that time, they had many relationships in common. The T-B family contacted the Sacramento County Department of Child, Family and Adult Services (the Department) to request that they be assessed for placement of the minors. The Department referred the T-B family for a resource family assessment (RFA).

On September 23, 2021, approximately one month after the subject minors' births, the D-V family filed section 388, subdivision (b) petitions on behalf of half siblings E.T. and P.T. (their then wards) "requesting to assert [E.T. and P.T.]'s relationship as siblings, related through birth mother, and establish rights for visitation." The petition also requested the minors' "placement plan consider [their] relationship with [their] siblings"

2

and asked that the minors be placed "with a family that is part of our extended family and community so that the siblings will grow up together." The petitions expressly noted that the T-B family shared their family values and were ready and willing to provide a home for the minors. On December 29, 2021, appointed counsel for half sibling J.T.D-V (whose adoption by the D-V family had been finalized), filed a similar section 388, subdivision (b) petition seeking recognition as the minors' sibling, the minors' placement "forthwith" in the T-B family's home, and an order permitting frequent visitation between the minors, himself, and his other siblings. The minors' counsel supported placement of the minors with the T-B family.

By this time, the minors' great aunt and uncle (the M-J family), who live in Maryland, had come forward to request placement, which was mother's preferred placement option. The juvenile court authorized visits between both the minors and the M-J family, and the minors and the T-B family. A placement hearing and the hearings on appellants' section 388 petitions commenced on January 13, 2022, but they were continued, to be heard along with the section 366.26 hearing, several times to March 28, 2022. On March 1, 2022, the T-B family filed section 388 petitions requesting placement of the minors.

The juvenile court conducted a lengthy hearing over the course of several weeks. Both the T-B family and the M-J family assured the court they would foster relationships between the minors and their siblings if the minors were placed with them. The M-J family explained that such visits would be primarily virtual with in-person visits two or three times per year. The M-J family also intended to introduce the minors to many extended relatives. Two days before the conclusion of the hearing, the T-B family's RFA was approved.

The juvenile court granted appellants' requests to be recognized as the minors' siblings. It found the minors were in need of a new placement and the M-J family were relatives entitled to placement preference pursuant to section 361.3. It also found the T-B

3

family were not nonrelative extended family members as defined in section 362.7 because they did not have a preexisting significant and established relationship with any relatives of the minors when they came forward but had, instead, forged a relationship afterward. The court then evaluated and considered the M-J family for placement using the factors set forth in section 361.3, also expressly considering the desires of the appellants as siblings, providing a detailed and thoughtful explanation of the many considerations. The court concluded it was in the minors' best interests to be placed with the M-J family.[3] It denied the T-B family's section 388 petitions requesting placement, as well as the specific placement requests in appellants' petitions, and ordered the Department to develop a visitation schedule for the minors and appellants.

The juvenile court then turned to the section 366.26 hearing and terminated parental rights. Mother did not appeal the section 366.26 orders, which are now final. Appellants appeal the juvenile court's denial of their section 388 specific placement requests. Neither the minors, nor the T-B family, appealed from the juvenile court's placement orders or the denial of the T-B family's petitions.

This case was assigned to a panel on December 15, 2022. Upon review of the parties' briefs and the record, we directed the parties to file supplemental briefs addressing whether the appeal has been rendered moot in light of the now final orders terminating parental rights and/or the status of appellants as nondependent minors, and whether appellants have standing to raise any of the issues identified in appellants' opening brief. We ordered the parties' supplemental briefs to specifically include whether appellants have standing to appeal: (1) the juvenile court's determination of the T-B family's status as nonrelative extended family members; (2) the juvenile court's

---

[3] The juvenile court also made findings relating to the maternal grandmother's conditional request for placement, who preferred the M-J family be considered for placement first.

4

order denying placement of the minors in the home of the T-B family; and (3) the juvenile court's order placing the minors with the M-J family. The supplemental briefs were also to include whether appellants have standing to appeal the juvenile court's denial of the September 23, 2021, JV-180 form filed by D-V family, the December 27, 2021, JV-180 form filed by appellant J.T.D-V, or the March 1, 2022, JV-180 form filed by the T-B family. We received the parties' supplemental briefs, as well as an application and brief from Advokids and Legal Services for Children as amici curiae. This case was fully briefed on March 15, 2023.

We dismiss the appeals for lack of standing.

## DISCUSSION

This is *not* a case challenging a juvenile court's decision not to place the minors in the same home as their siblings. As the juvenile court noted, that was not an option here, as the D-V family home could not accommodate placement of the minors. Instead, appellants here challenge the juvenile court's decision not to evaluate and place the minors in the home of their third party of choice and to, instead, place the minors with relatives in Maryland. We conclude appellants lack standing to raise this claim.

The issue before us is one of standing, not appealability. Orders denying petitions under section 388 are appealable under section 395. (*In re K.C.* (2011) 52 Cal.4th 231, 235-236.) Standing to appeal even an appealable order extends only to a "party aggrieved" by the order appealed therefrom. (Code Civ. Proc., § 902; *In re Aaron R.* (2005) 130 Cal.App.4th 697, 703; *In re Crystal J.* (2001) 92 Cal.App.4th 186, 190-191.) "To be aggrieved, a party must have a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote consequence of the ruling does not satisfy this requirement." (*In re Carissa G.* (1999) 76 Cal.App.4th 731, 734.) The ability to appeal does not confer standing on parties not aggrieved by the order from which the appeal is taken. (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715; *In re Frank L.* (2000) 81 Cal.App.4th 700, 703-704;

5

*Carissa G.,* at p. 734; *In re Gary P.* (1995) 40 Cal.App.4th 875, 877.) Nor is standing to challenge an adverse ruling established merely because a party takes a position on an issue that affects the minor. (*Frank L.,* at p. 703.) Without a showing that the party's personal rights are affected by a ruling, the party does not establish standing. (*Ibid.*) In sum, a would-be appellant "lacks standing to raise issues affecting another person's interests." (*In re Gary P.,* at p. 876.)

Appellants here have failed to put forward a legally cognizable interest that would allow them to challenge the minors' placement orders, whether directly or as result of the denial of the specific placement requests, they included in their section 388 petitions. They argue, in substance, that they have a legally cognizable interest in maintaining sibling relationships and visitation with the minors and, since the minors' placement impacts the ease of their ability to maintain their relationship, they also have a legally cognizable interest in the minors' placement. They do not.

In our order for supplemental briefing, we directed the parties to discuss our opinion in *In re J.T.* (2011) 195 Cal.App.4th 707 (*J.T.*). In *J.T.*, J.T.'s sister filed a section 388, subdivision (b) petition seeking standing at the permanency planning hearing to present evidence on the sibling relationship between herself and the minor and to assert the sibling bond exception to adoption. The juvenile court granted the motion. (*J.T.,* at p. 715.) At the hearing, the juvenile court acknowledged the existence of a close sibling bond between J.T. and his sister based upon their lives together and shared common experiences. However, the court found the relationship was not sufficiently significant such that termination of parental rights would cause detriment to J.T. The court also noted that J.T. wanted to remain and be raised by his prospective adoptive parents. The court found that the sibling relationship exception was not applicable and terminated parental rights. (*Id.* at p. 716.) The mother and the sister appealed.

In finding the sister lacked standing to appeal, we stated: " 'At stake in a dependency proceeding is both the [dependent] child's welfare and the parent-child

6

relationship.' [Citation.] The legally cognizable interest in the maintenance of the sibling relationship relates to the *minor's* welfare and the relationship between him and mother. It is the *minor's* interest, not his sister's interest, that is at issue." (*J.T., supra,* 195 Cal.App.4th at p. 717.) Although the sibling relationship is not irrelevant, the issue is whether adoption would be detrimental to the adoptive child, not the sibling. (*Id.* at p. 718.) Accordingly, the detriment caused to a sibling by the termination of parental rights does not give the sibling standing to appeal the termination of parental rights.

The sister in *J.T.* argued that because section 388, subdivision (b)[4] allowed her to participate in the permanency planning hearing, she should have standing to appeal. (*J.T., supra*, 195 Cal.App.4th at p. 718.) We rejected this argument, explaining: "In raising the sibling relationship exception before the juvenile court, sister was not asserting her own interest or right. Rather, she was asserting the minor's interest on his behalf. In this way, conferring the ability to participate in the permanency planning hearing on sister is similar to conferring de facto parent status on a caregiver. The acquisition of de facto parent status does not confer standing to appeal from *any* juvenile court order; rather, it confers standing to challenge only orders pertaining to those things to which the de facto parent is entitled. [Citation.] Sister is not entitled to challenge the termination of parental rights nor does she have a right to block the minor's adoption. Thus, although sister was permitted to assert the sibling relationship exception to adoption and present evidence on the issue, she has no standing to challenge the

---

**4** Section 388, subdivision (b)(1), provides that any person, including a dependent child "may petition the court to assert a relationship as a sibling related by blood, adoption, or affinity through a common legal or biological parent to a child who is . . . a dependent of the juvenile court, and may request visitation with the dependent child, placement with or near the dependent child, or consideration when determining or implementing a case plan or permanent plan for the dependent child or make any other request for an order which may be shown to be in the best interest of the dependent child." (§ 388, subd. (b)(1).)

7

termination order because *her* legal rights are not impacted by that order. ([*In re* ]*Frank L., supra*, 81 Cal.App.4th at p. 703.)" (*Ibid.*)

While we recognize the factual distinction that, in the instant matter, appellants sought a specific placement for the minors, rather than seeking to assert the sibling exception to adoption, and the juvenile court granted appellants' 388 petitions to be recognized as siblings, it still entitled them to present evidence and make requests *on behalf of the minors*; it did not invest them with a legally cognizable interest in the outcome of the hearing or in the placement of the minors. Appellants, as siblings, do not have a legal interest in the minors' placement in the home of their desired third party.

Appellants argue they are aggrieved by the placement order because the minors' placement may impact their sibling relationships by making in-person visits more difficult and less frequent; at least they so speculate it will. Such indirect consequences of a possible placement option do not bestow standing upon appellants to assert error in the placement order. Moreover, any perceived benefit of placement with this particular third party is speculative. In making their argument, appellants assume that they would continue to enjoy regular in-person visits with the minors if they were to be adopted by the T-B family. Of course, there is no way to assure such regular visitation. Appellants in this case are no longer dependents of the court. Accordingly, neither this court, nor the juvenile court upon direction of this court, can order visitation between the siblings. The juvenile court has no statutory authority to enter visitation orders regarding nondependent siblings who are not placed with a parent of the minors. (*In re Luke H.* (2013) 221 Cal.App.4th 1082, 1087-1091; § 388, subd. (b)(2).) Additionally, should the minors be adopted, which is the minors' current permanent plan, the adoptive parents could, at any time and for any reason, cease all contact with the siblings and the D-V family. Thus, any personal interest in the minors' *placement* solely by virtue of an interest in continued visitation, is not only too remote, but it is also too speculative to invest appellants with standing.

8

In sum, the juvenile court's placement order was not insusceptible to review. The T-B family had standing to appeal and assert their interest in placement of the minors, and the minors certainly had standing to appeal the placement orders. But they did not appeal. Appellants, as siblings and the only individuals who did appeal, do not have a legally cognizable personal interest in the minors' placement order just because it may indirectly impact the ease of their ability to maintain or develop relationships with the minors.

## DISPOSITION

The appeals are dismissed.


_____/s/_____
BOULWARE EURIE, J.



We concur:



_____/s/_____
HULL, Acting P. J.



_____/s/_____
EARL, J.